## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

MARK A. HEATHERLY,                    :

     Plaintiff,                    :
                                    Case No. 3:11cv00438

vs.                    :

                                    District Judge Walter Herbert Rice

MICHAEL J. ASTRUE,                    :     Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,                    :

     Defendant.                    :

## REPORT AND RECOMMENDATIONS[1]

## I.    INTRODUCTION

Plaintiff Mark A. Heatherly sought financial assistance from the Social Security

Administration by applying for Disability Insurance Benefits (DIB) in January 2007,

alleging disability since June 24, 2004.  (*PageID## 305-10*).  He claims disability from

"Lumbar, leg, arm pain, arthritis in all joints of hand, feet, arm, legs."  (*PageID# 335*).

     After various administrative proceedings, Administrative Law Judge (ALJ)

Thomas R. McNichols II denied Plaintiff's DIB application based on his conclusion that

Plaintiff's impairments did not constitute a "disability" within the meaning of the Social

Security Act.  (*PageID## 74-86*).  The ALJ's nondisability determination and the

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

resulting denial of benefits later became the final decision of the Social Security

Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §

405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the

Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. # 10), the

administrative record (Doc. # 7), and the record as a whole.

Plaintiff seeks a fully favorable decision remanding this matter for payment of

benefits. The Commissioner seeks an Order affirming the ALJ's decision.

## II.   BACKGROUND

### A.   Plaintiff's Vocational Profile and Testimony

Plaintiff was 46 years old on his date last insured and is thus considered to be a

"younger individual" for purposes of resolving his DIB claim. *See* 20 C.F.R. §

404.1563(c); *see also PageID##* 84, 330. Plaintiff has a high school education with sheet

metal vocational school training. (*PageID#* 341). He has past relevant work as a sheet

metal worker. (*PageID#* 336).

Plaintiff testified at the November 10, 2009, administrative hearing[2] that he was 5'

2" and weighed 250 pounds. (*PageID#* 135). His weight had remained stable for the six

months prior to the hearing. *Id.* He had a driver's license but only drove about once a

week due to side effects from his medications. (*PageID#* 137). Medications caused

---

[2]Because resolution of the issues presented in this case do not turn on the vocational expert testimony, the
Court will not summarize that testimony presented at the administrative hearing.

drowsiness and issues with alertness.  (*PageID##* 137-38).  Plaintiff attended a four-year

apprenticeship as a sheet metal worker.  (*PageID#* 138).

Plaintiff testified that he stopped working in June 2004 as a sheet metal worker due

to his back pain.  (*PageID#* 139).  Due to the medication and therapy he quit "for [his]

safety and the safety of the people [he] worked with."  (*Id.*).  He has not since attempted

to work.  (*Id.*).

He stated that his low back pain is caused by arthritis and spinal stenosis "where

the nerve goes through and it gets pinched."  (*PageID#* 140).  He had not had back

surgery because he was told that he had to lose weight.  He weighed 360 pounds at that

time, but has since lost weight.  (*Id.*).  He stated he was "trying to hold off," noting he

was worried about "whether [the physicians] mess it up, I can't walk..." (*Id.*).

Plaintiff was next questioned as to the problems with his neck.  He testified he has

five pinched nerves, and two doctors had recommended surgical intervention.  (*PageID##*

142-43).  He was treated conservatively with physical therapy and pain management.

(*Id.*).  He is able to raise his arms above his shoulders but not for a long time.  (*PageID#*

143).  He also reported use of both arms, hands, and fingers, but due to his arthritis, he

can't grip for long.  (*Id.*).  He noted for the past six years he drops things, noting, "I don't

even know I'm dropping them."  (*Id.*).  He testified to having arthritis in his hands,

shoulders, "two spots" in his back, neck, and ankles.  (*Id.*).  He receives pain shots in his

shoulders.  (*Id.*).

Plaintiff testified to having had "bad problems" stemming from his gastric bypass

surgery. (*PageID#* 145). He underwent surgery in 2005, however, the surgery was reversed in January 2007 due to complications. (*PageID##* 166-67). At the time of the hearing, he denied any complications from the reversal. (*Id.*). Plaintiff also testified to suffering from diabetes and hypertension, (*PageID##* 145-46), but both conditions were controlled with medication. (*Id.*). He had been on blood thinner medication for between 10 and 12 years due to a Factor V deficiency[3]. (*PageID#* 171).

Plaintiff estimated that he could walk for 200 yards (*PageID##* 153-54); he could stand for between 15 and 30 minutes (*PageID#* 154); he could sit for between 15 and 30 minutes at a time (*Id.*); he could lift a gallon of milk, weighing eight pounds (*PageID#* 155); and was able to climb stairs slowly (*PageID##* 155-56).

As to his activities of daily living, Plaintiff related that he was independent in self-care, though his wife sometimes had to help him with buttons and zippers. (*PageID#* 144). He did a little cooking and tried to help out with some light household chores, such as making beds, sweeping, and vacuuming. (*PageID##* 156, 169). He socialized with family members and friends. (*PageID#* 157). He helped mow the grass – mowing two or three times in the summer prior to the hearing. (*PageID#* 159). He smoked two packs of cigarettes per day. (*PageID#* 160). He spent a typical day watching television while lying in bed. (*PageID#* 161).

---

[3]Factor V deficiency is a condition which affects the ability of the blood to clot. *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001577/

When asked to rank his daily back pain level on a scale of 1 (no pain) to 10 (worst pain imaginable), Plaintiff testified that his pain level on a typical day was 7. (*PageID#* 150). He ranked his neck pain at 5. (*PageID#* 152). His most comfortable position was lying down. (*PageID#* 153).

Plaintiff has described suffering from depression, which he treats with medication. (*PageID#* 147). At the conclusion of this hearing, the ALJ ordered a consultive examination of Plaintiff noting there was not a thorough examination in the record. (*PageID#* 175).

Plaintiff testified at the April 8, 2010, administrative hearing that he was still taking pain medication and receiving pain shots, but had not gone back to physical therapy. (*PageID#* 110). He had not had surgery for his neck. (*Id.*). The remainder of Plaintiff's testimony at the subsequent hearing reiterated his testimony above. (*PageID##* 111-22).

### B.  Medical Source Opinions

Plaintiff relies on the opinions of his primary care physician, Robert Hunter, D.O. Dr. Hunter treated Plaintiff from October 2003 through at least September 2009, for among other complaints: hypertension, diabetes mellitus, Factor V Leiden deficiency, and complaints of syncope. (*PageID##* 483-522, 566-81, 757-58, 948-1069, 1108-11). In July and November 2009, Dr. Hunter completed medical source statements reporting that Plaintiff was unable to perform the requirements of even sedentary work and would only be able to work one to two hours per day for three days per week, and would need to rest

5

three hours a day by lying down or reclining.  (*PageID##* 1070-78, 1113-21).  Dr. Hunter premised his assessments on the diagnoses of cervical radiculopathy with increased weakness in his right arm, lumbar radiculopathy, hypertension, diabetes mellitus, Factor V Leiden deficiency, and severe degenerative disk disease in both the cervical and lumbar spines.  (*PageID##* 1077, 1120).

Plaintiff also relies on the opinions of his pain management doctor, Jeffrey Rogers, D.O.  Dr. Rogers reported on August 21, 2009, that Plaintiff presented in May 2008 with complaints of neck pain with radiculopathy into both shoulders, and weakness in his hands.  He related this to an accident about 25 years prior.  He had undergone a series of transforaminal nerve blocks with significant relief of his back and leg pain.  Dr. Rogers recommended a series of cervical epidural injections for Plaintiff at that time.  These did appear to help his pain somewhat and he was given prescription medication in the form of Zanaflex and Ultram.  Dr. Rogers' associate, Dr. Tigyer, did not consider him to be a surgical candidate for his neck condition.  His low back and leg pain returned and a discussion was held regarding the possibility of a dorsal column stimulator.  Plaintiff underwent the dorsal column stimulator trial in February 2009.  While Plaintiff reported that he felt better in terms of pain, this did not relieve the pain completely.  Plaintiff eventually determined he did not wish to have the surgical implantation performed.

Dr. Rogers opined that Plaintiff "is unable to be gainfully employed.  I do not expect this situation to make a dramatic improvement.  My prognosis for his return to work is rated as poor.  I would state he is permanently and totally disabled." (*PageID#*

1079).  On November 11, 2009, Dr. Rogers opined that Plaintiff was "totally and permanently disabled."  (*PageID#* 1112).

The third medical opinion upon which Plaintiff relies to support his argument that he is disabled belongs to Dr. John Maguire, who treated Plaintiff for complications from gastric bypass surgery.  In January 2007, Dr. Maguire reported that following Plaintiff's reversal surgery, for a year he was "unable to do much of anything."  Dr. Maguire felt that Plaintiff had been physically incapacitated from the combination of malnutrition and back pain: "He is doing somewhat better with his eating.  He has regained some of the weight he has lost, although he still has problems eating because of his gastric motility problem [and] chronic back pain."  Dr. Maguire also opined that Plaintiff may be a candidate for back surgery, but in the meantime, he was not able to work and "unlikely to in the future unless he makes a pretty remarkable recovery, which is possible, but I feel at this time he should have total disability."  (*PageID#* 554).

The Commissioner relies on the opinion of Aivars Vitols, D.O., who examined Plaintiff at the request of the Ohio Bureau of Disability Determination in November 2009. (*PageID##* 1091-1107).  Plaintiff complained of constant neck and low back pain with radiation to all four extremities and occasional shortness of breath.  Examination showed restricted active range of motion in the shoulder, but full passive range of motion.  Range of motion in the cervical spine was unrestricted.  Muscle strength was normal in both upper extremities, as was grip strength.  The lumbosacral spine was tender to palpitation and showed painful, restricted range of motion.  There was no loss of sensation in the

lower extremities. Dr. Vitols diagnosed chronic lumbosacral sprain/strain; multilevel foraminal stenosis of the lumbosacral spine; multilevel facet arthropathy of the lumbosacral spine; central canal stenosis at L4-5, foraminal stenosis of the thoracic spine at T10-11; diabetes mellitus; and exogenous obesity. (*PageID#* 1095). Dr. Vitols concluded that Plaintiff has limited capabilities of performing regular work related activities, such as bending or twisting at the waist, on a regular basis. He has the ability to change positions throughout the day. He cannot carry materials on a regular basis. His ability to use his upper extremities is not impaired. Plaintiff's work capabilities would range in a sedentary to light duty work capacity. (*Id.*).

## III. ADMINISTRATIVE REVIEW

### A. <u>"Disability" Defined</u>

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70. A DIB applicant bears the ultimate burden of establishing that he or she is under a "disability." *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

The term "disability" – as defined by the Social Security Act – carries a specialized meaning of limited scope. Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

## B.    Social Security Regulations

Administrative regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See PageID## 75-76; see also* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review answers five questions:

1.    Has the claimant engaged in substantial gainful activity?

2.    Does the claimant suffer from one or more severe impairments?

3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4.    Considering the claimant's residual functional capacity,[4] can he perform his past relevant work?

5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available

---

[4]The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

## C.    **ALJ McNichols' Decision**

ALJ McNichols found at Step 1 of the sequential evaluation that Plaintiff meets the insured status requirements of the Act through December 31, 2009.  Plaintiff has not engaged in substantial gainful activity since June 24, 2004.  At Step 2, ALJ McNichols concluded that through the date last insured, Plaintiff has the severe impairments of degenerative joint disease of the cervical spine with chronic neck pain; degenerative joint and degenerative disk disease of the lumbosacral spine with chronic low back pain; and obesity.  (*PageID#* 77).  The ALJ determined that Plaintiff's diabetes mellitus, hypertension, Factor V Leiden deficiency, and depression are nonsevere.  (*PageID#* 80).

The ALJ concluded at Step 3 that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or equaled one in the Listings.  (*PageID#* 77).

At Step 4, ALJ McNichols concluded that through the date last insured, Plaintiff retained the residual functional capacity (RFC) to perform sedentary work.[5]  Specifically, the ALJ found:

---

[5]The Regulations define sedentary work as involving the ability to lift " no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools...." 20 C.F.R. § 404.1567(a).

Giving the claimant the full benefit of doubt with regard to his allegations and subjective complaints, it is found that he was limited to jobs which would have afforded him the opportunity to alternate between sitting and standing at 30-minute intervals. He should not have been expected to have performed work which would have required work above the shoulder level on more than an occasional basis. He was further limited to jobs that would have required no more than occasional use of foot controls. He was restricted to work that would not have required stooping, kneeling, crouching, crawling, balancing or climbing. He was further restricted to jobs that would not have required exposure to industrial hazards or vibrations. He should not have been expected to perform jobs which would have required him to maintain concentration on a single task for longer than 15 minutes at a time. And, in addition, he could stand and/or walk no more than six hours per eight-hour day.

(*PageID#* 81). The ALJ concluded at Step 4 that Plaintiff was unable to perform his past relevant work as a sheet metal worker. (*PageID#* 84).

At Step 5, the ALJ used section 201.21 of the Grid[6] as a framework for deciding, and considering Plaintiff's age, education, work experience, and RFC, found there are jobs that exist in significant numbers in the national economy that Plaintiff could have performed. (*PageID#* 85).

The ALJ's findings throughout his sequential evaluation led him to ultimately conclude that Plaintiff was not under a disability, and was therefore not eligible for DIB. (*PageID#* 86).

## IV.  JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by

---

[6]*See* Medical-Vocational Guidelines, 20 C.F.R. Subpart P, Appendix 2.

substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[Even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V. DISCUSSION

### A. The Parties' Contentions

Plaintiff argues that the ALJ failed to follow the treating physician rule and thus erred by placing little weight on the opinion from his treating physicians, Dr. Hunter, Dr. Rogers, and Dr. Maguire. According to Plaintiff, the ALJ's analysis "seems to use only the findings which fit into his preconceived conclusions and ignore the medical evidence and medical opinions that coincide with Mr. Heatherly's claim to be disabled." (Doc. #8, *PageID##* 1136-37).

Plaintiff also argues that the ALJ erred in finding that the combination of Plaintiff's impairments did not meet the listed impairments. (*Id.*, *PageID#* 1134).

The Commissioner maintains that the ALJ reasonably evaluated the medical source opinions of record and fully explained why he did not rely on Dr. Hunter, Dr. Rogers, and Dr. Maguire's opinions. The Commissioner argues that the ALJ reasonably concluded the lack of supporting objective evidence and inconsistency with significant evidence in the record entitled these treating physicians' opinions little weight and properly articulated good reasons for doing so.

### B. Medical Source Opinions

#### 1.

#### Treating Medical Sources

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the ALJ. *Blakley,* 581 F.3d at 406 (6th Cir. 2009); *see Wilson*, 378 F.3d at 544 (6th Cir. 2004). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. (*Id.*).

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544).

More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(1). Yet the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p.

14

Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. § 404.927(d), (f); *see also* Ruling 96-6p at *2-*3.

**2.**

**Non-Treating Medical Sources**

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p, 1996 WL 374180 at *2. Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source. *See id.* at *2-*3. The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in § 404.1527(d), including, at a minium, the factors of supportability, consistency, and specialization. *See* 20 C.F.R. § 404.1527(f); *see also* Ruling 96-6p at *2-*3.

**C.**     **Analysis**

The ALJ correctly described the legal standards applicable to weighing opinions provided by a treating medical source, *see* Doc. #7, *PageID##* 81-82, and in doing so, did not err as a matter of law. Judicial review of the ALJ's decision thus turns to his

application of those legal standards to Dr. Hunter, Dr. Rogers, and Dr. Maguire's

opinions.

The ALJ declined to give controlling weight to the opinions of Plaintiff's treating

physicians – Dr. Hunter and Dr. Rogers – explaining in part:

> Drs. Hunter and Rogers, both treating sources, reported that the claimant
> was disabled from all work activity. The ultimate conclusion as to whether
> an individual satisfies the statutory definition of "disability," however, is an
> issue that is reserved to the Commissioner of Social Security (Social
> Security Ruling 96-5p; 20 CFR 404.l527 and 416.927).

(Doc. #7, *PageID#* 81). The ALJ continued:

> [T]he conclusion of neither physician that the claimant is disabled/
> unemployable can be given controlling, or even deferential, weight. Dr.
> Rogers reported that the claimant was disabled due to chronic pain.
> Complaints of pain are subjective, and as such, are insufficient to support a
> finding of disability. Subjective complaints of pain must be evaluated along
> objective medical findings. Dr. Rogers provided no objective findings to
> support his opinion, and the overall weight of the medical evidence fails to
> support them. Dr. Hunter, the claimant's primary care physician, reported
> that the claimant would be unable to perform even sedentary work on a
> regular and continuing basis. However, he also provided no objective
> medical findings to support his opinion. A simple recitation of the
> claimant's ailments, absent documented clinical findings, is insufficient. As
> neither medical opinion is supported by the medical record and is
> inconsistent with other medical evidence of record, they are afforded little
> weight.

(*Id.* at *PageID#* 82, citation to record omitted).

As to Dr. Maguire's opinion, the ALJ afforded his opinion "little weight," noting

subjective complaints of pain alone are insufficient to established disability. (*Id.*). In

addition, the ALJ noted that Dr. Maguire reported that Plaintiff was totally disabled due

16

to malnutrition and low back pain, but Plaintiff underwent a reversal of his gastric bypass without residual problems. The ALJ determined that at 70 inches in height and a weight of 250 pounds, Plaintiff cannot be considered malnourished. (*Id.*).

At best for the Commissioner, the ALJ's reasoning indicates that he considered Dr. Hunter, Dr. Rogers, and Dr. Maguire's opinions under factors applicable to determining whether their opinions were due controlling weight under the treating physician rule. The ALJ's reasoning, however, contains no indication that he evaluated their opinions under the remaining factors – "the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician," *Blakley,* 581 F.3d at 406 – as the Commissioner's Rulings, and case law require. "When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of other factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242; *see Wilson*, 378 F.2d at 544.

Even assuming Dr. Hunter's opinions were not entitled to controlling weight status, the ALJ failed to follow the Commissioner's Regulations on considering various

enumerated factors before assigning the opinions little weight. 20 C.F.R. §

404.1527(d)(2)-(6). Although Dr. Hunter is not a specialist, all of the other factors weigh

in favor of crediting the treating doctor's opinions. Dr. Hunter examined Plaintiff; he

treated Plaintiff over a longitudinal period of time and on a regular basis; he provided

specific clinical and diagnostic findings to support his diagnoses and findings; and, his

findings are consistent with the record as a whole. The record makes clear that Dr.

Hunter was responsible for coordinating Plaintiff's care with the other specialists of

record, and that he was well-aware of Plaintiff's diagnoses and treatments provided by his

other health care providers. *See* 20 C.F.R. § 404.1527(d)(2); *Blakley*, 582 F.3d at 406.

Furthermore, Dr. Hunter did more than recite Plaintiff's ailments, as the ALJ implied.

Rather, Dr. Hunter also relied on Plaintiff's x-rays and laboratory test results. *See,

e.g.,*Doc. #7, *PageID##* 483-522, 566-81, 757-58, 948-1069, 1108-11.

   The ALJ and the Commissioner are correct in recognizing that the ultimate

decision of disability is one reserved to the Commissioner. Therefore, to the extent that

Dr. Hunter, Dr. Rogers, and Dr. Maguire concluded Plaintiff was disabled, the ALJ was

not bound to accept his opinion regarding this issue. Nevertheless, the fact that a treating

physician expresses an opinion about a Plaintiff's disability status says nothing about the

factors applicable to weighing the physician's opinions under 20 C.F.R. § 404.1527(d).

   The ALJ's rejection of the limitations suggested by Dr. Hunter and Dr. Rogers is

not supported by substantial evidence in the record as a whole. There is no question that

the ALJ relied heavily, if not exclusively, on the examination findings of Dr. Vitols. But

the ALJ failed to evaluate non-treating physician Dr. Vitols' opinion under any factor required by the Regulations. The ALJ's decision neither considers nor mentions the supportability or consistency of Dr. Vitols opinion and does not refer to any other factor, when discussing this physician's opinion. *See* Doc. #7, *PageID##* 83-84. This constituted a failure to apply the correct legal criteria because the Regulations and Rulings required th ALJ to weigh the opinions of one-time examining physicians under the regulatory factors, including supportability, consistency, and specialization. *See* 20 C.F.R. § 404.1527(d), (f); *see also* Social Security Ruling 96-6p, 1996 WL 374180. The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see* also 20 C.F.R. §404.1527(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §404.1527(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same). Accordingly, Plaintiff's argument is well taken.

Plaintiff also argues the ALJ erred by not finding his impairments, or a combination thereof, meet the listed impairments. (Doc. #8, *PageID#* 1134). As the Commissioner correctly notes, however, Plaintiff has provided no indication of specifically which listing section he believes his impairments meet or equal. (Doc. #9, *PageID#* 1144). Thus, even assuming such argument is not waived as a result, Plaintiff has failed to meet his burden of proving that any of his impairments, or a combination thereof, meet or equal a listed impairment. Such argument is therefore found to be

without merit.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003)("In order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing.") (citations omitted).

**VI.**　**Remand Is Warranted**

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g) due to problems set forth above. On remand, the ALJ should be directed to (1) re-evaluate the medical source opinions of record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) reconsider, under the required sequential

evaluation procedure, whether Plaintiff was under a disability and thus eligible for DIB.

Accordingly, the case should be remanded to the Commissioner and the ALJ for

further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The Commissioner's non-disability finding be vacated;

2.  No finding be made as to whether Plaintiff Mark A. Heatherly was under a "disability" within the meaning of the Social Security Act;

3.  This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4.  The case be terminated on the docket of this Court.

November 14, 2012

    s/Sharon L. Ovington  
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)©, (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).